UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 05-1657(DSD/JJG)

Jonathan L. Goodman,

    Plaintiff,

v.                                                              **ORDER**

Bestbuy, Inc.,

    Defendant.

    Amandu E. Swaray, Esq., Law Offices of Swaray & Associates, P.A., 5701 Shingle Creek Parkway, Suite 610, Brooklyn Center, MN 55430, counsel for plaintiff.

    Charles O. Lentz, Esq. and Robins, Kaplan, Miller & Ciresi, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon defendant's motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion in part and dismisses plaintiff's state law claims without prejudice.

**BACKGROUND**

This is an action for wrongful termination under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-54, and the Minnesota Human Rights Act ("MHRA"), Minnesota Statutes sections 363A.01-41. On September 30, 2002, defendant Best Buy, Inc., hired plaintiff Jonathan L. Goodman as a customer service representative in its

customer call center. On February 21, 2005, Best Buy terminated Goodman's employment, citing violations of its attendance policy. Goodman commenced this action alleging that his employment was unlawfully terminated because the unexcused absences for which he was discharged were the result of needed medical treatment for his high blood pressure.

The Best Buy customer relations attendance policy provides that for any twelve-month period an employee receives a verbal warning for six unexcused absences, a written warning for seven unexcused absences and a final written warning for eight unexcused absences. (Goodman Dep. Ex. 7.) Best Buy terminates employment following nine unexcused absences within any twelve-month period. (Id.) Best Buy has a similarly structured tardiness policy, pursuant to which an employee is verbally warned following five tardies within any twelve-month period, receives a written warning after ten tardies, a final written warning after fifteen tardies and is terminated after sixteen tardies. (Id.) Goodman admits that he was aware of and understood Best Buy's attendance policy. (Id. at 21-22.)

On November 3, 2003, Goodman received a verbal warning for unexcused absences and received four written warnings and an additional verbal warning by February 21, 2005.[1] (Id. Exs. 9-11,

---

[1] The verbal warning dated November 3, 2003, cited the following prior dates of unexcused absences in 2003: March 25, May
(continued...)

13-15.)  Specifically, on October 30, 2004, Goodman received a written warning following his seventh absence within twelve months. On November 8, 2004, he received a final written warning following an eighth absence, which stated that if he was absent one more time his employment would be terminated.  In addition to the absences, following seventeen documented tardies Goodman received a final written warning for unexcused tardiness on November 25, 2004.  (Id. Ex. 16.)  He received a second final written warning for unexcused tardiness on December 20, 2004.  (Id. Ex. 17.)

On February 17, 2005, Goodman did not feel well.  The following day he sought medical treatment from Dr. S. M. Hockett. Goodman informed Dr. Hockett that he had a history of high blood pressure, he did not feel well, had a headache, noticed pressure sensation in his left arm and leg and had previously taken high blood pressure medication.  Dr. Hockett diagnosed Goodman with high blood pressure and gave him a prescription and a note to take three days off of work.  According to Dr. Hockett, however, Goodman's high blood pressure would not have impaired him from returning to work, limited his ability to perform his job or required that restrictions be placed on his work activities.  (Hockett Dep. at 26-27.)  Dr. Hockett testified that a person in Goodman's condition

---

[1](...continued)
27, June 16, July 14, September 4 and October 23.  (Goodman Dep. Ex. 9.)

would not have needed to miss work and he could not recall why he had written the note. (Id. at 24-26.)

On February 18 and 19, 2005, Goodman was scheduled to work. He called the company attendance line each day to report that he would be absent, giving his name, employee number and telephone number. Goodman stated in his messages only that he was "sick." Goodman was not scheduled to work on February 20 and returned to work on February 21. On the 21st, Goodman's supervisor, Ivan Antonio, told him that his employment was being terminated because he had accrued nine unexcused absences in twelve months. Antonio provided Goodman a notice of termination as well as a separation notice. (Goodman Dep. Exs. 4-5.) The separation notice cited the final written warning that Goodman received on November 8, 2004, and the termination notice identified nine unexcused absences.[2]

When Antonio informed Goodman that his employment was being terminated and provided him with the relevant paperwork, Goodman gave Antonio Dr. Hockett's note, which stated: "Off work until Mon. 2/21/05." (Goodman Aff. ¶¶ 18-19; Goodman Dep. Ex. 1.) He did not inform Antonio that his absences on the 18th and 19th were a result

---

[2] Specifically, the termination notice identified the following dates that Goodman was absent in 2004: May 26, July 14, August 16, September 11, October 16, October 30, a half-day on December 17 and a half-day on December 18. In addition, Goodman was absent on February 11 and 18, 2005.

of his high blood pressure.  Neither did he tell Antonio why Dr. Hockett wrote the note nor the nature of any medical condition that caused him to miss work on the 18th and 19th.

During his employment with Best Buy, Goodman never requested leave under the FMLA or informed Best Buy that his high blood pressure would require him to be absent from work, necessitate a leave of absence or impair his ability to work.  (Goodman Dep. at 104, 108-09.)  Goodman mentioned to his supervisors during one-on-one meetings that he had high blood pressure while they were discussing his general welfare, work conditions and unexcused absences.  However, other than the 18th and 19th, Goodman is unable to recall which, if any, of his prior unexcused absences were the result of high blood pressure.  (Id. at 97-100.)  According to Goodman, he was first diagnosed with high blood pressure in 1989 and was subsequently treated by a physician.  (Goodman Aff. ¶ 2.)  However, the only evidence in the record of medical treatment for Goodman's high blood pressure during the course of his employment with Best Buy is dated subsequent to February 18, 2005, the date he was first treated by Dr. Hockett.  (See Swaray Decl. Exs. C, C-1, F, F-1 and Lentz Decl. Exs. C-1-5.)

Goodman commenced this action in Minnesota state court claiming that his high blood pressure constitutes a "serious health condition" for purposes of the FMLA and a disability for purposes of the MHRA and that Best Buy's termination of his employment

5

violated both Acts. Best Buy removed the action to this court pursuant to 28 U.S.C. § 1331 and now moves for summary judgment on both claims.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. See id. at 255. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be

granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. Family Medical Leave Act Claims**

Under the FMLA, an employee is entitled to twelve weeks of unpaid leave during any twelve-month period if the employee has a "serious health condition that makes the employee unable to perform the functions" of their employment position. 29 U.S.C. § 2612(a)(1)(D). Goodman argues that Best Buy interfered with his rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1), and retaliated against him for the exercise of those rights, in violation of 29 U.S.C. § 2615(a)(2).

**A. Interference Claim**

The FMLA prohibits employers from interfering with, restraining or denying the exercise of an employee's FMLA rights. 29 U.S.C. § 2615(a)(1); Throneberry v. McGehee Desha County Hosp., 403 F.3d 972, 977 (8th Cir. 2005). To prevail on an interference claim, an employee must establish that he was entitled to FMLA leave because he suffered a "serious health condition" and provided his employer adequate notice of his need for FMLA leave. See U.S.C. § 2612(a)(1)(D), (e)(2); Thorson v. Gemini, Inc., 205 F.3d 370, 376-83 (8th Cir. 2000) ("serious health condition"), Carter v. Ford Motor Co., 121 F.3d 1146, 1148 (8th Cir. 1997) (notice).

"Serious health condition" is defined objectively for purposes of the FMLA. Rankin v. Seagate Techs., Inc., 246 F.3d 1145, 1148 (8th Cir. 2001); Thorson, 205 F.3d at 376-77. To establish a "serious health condition," an employee must prove that he suffered an "illness, injury, impairment or physical or mental condition" that involved "continuing treatment by a health care provider." 29 U.S.C. § 2611(11). As relevant to this lawsuit, continuing treatment is defined to mean a period of incapacity that exceeds three consecutive days and is followed by subsequent treatment or a period of incapacity of any duration that is due to a "chronic serious health condition." 29 C.F.R. § 825.114(a)(2)(i),(iii). A "chronic serious health condition" is a condition that continues over an extended period of time, requires periodic visits for treatment and causes episodic periods of incapacity. 29 C.F.R. § 825.114(a)(2)(iii).

Even if a serious health condition exists, an interference claim will not succeed when an employee fails to establish that he provided the employer adequate and timely notice of his need for leave. Woods v. DaimlerChrysler Corp., 409 F.3d 984, 991 (8th Cir. 2005); Carter, 121 F.3d at 1148-49. When the need for FMLA leave is foreseeable, an employee must provide "not less than 30 days' notice, before the date the leave is to begin" or "such notice as is practicable." 29 U.S.C. § 2612(e)(2)(B). If leave is unforeseeable, an employee must give notice "as soon as practical

under the facts and circumstances." 29 C.F.R. § 825.303(a). Although an employee is not required to "invoke the FMLA by name" to provide adequate notice, an employee must provide "enough information to put the employer on notice that the employee may be in need of FMLA leave." Thorson, 205 F.3d at 381 (internal quotations omitted).

In evaluating whether adequate notice was given, the court can consider the totality of the circumstances, including whether the employer was aware the employee suffered from a serious health condition and whether the employee had previously requested FMLA leave. See Spangler v. Fed. Home Loan Bank of Des Moines, 278 F.3d 847, 852 (8th Cir. 2002) (statement that time off was needed due to "depression again" potentially valid request for FMLA leave when company was aware employee suffered from depression and previously needed leave). However, generalized statements that an employee is "ill" do not suffice to comply with the FMLA's notice requirements. McGraw v. Sears, Roebuck & Co., 21 F. Supp. 2d 1017, 1022 (D. Minn. 1998). Similarly, that an employee is "'[s]ick' does not imply 'a serious health condition.'" Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008 (7th Cir. 2001). In the context of FMLA leave, employers are "not required to be clairvoyant." Satterfield v. Wal-Mart Stores, Inc., 135 F.3d 973, 980 (5th Cir. 1998) (internal quotations omitted); McGraw, 21 F. Supp. 2d at 1022. To require an employer to affirmatively investigate whether FMLA leave is

9

appropriate whenever an employee who has repeatedly incurred unexcused absences calls in to report only that he is "sick" would be "unduly burdensome" and inconsistent with the purpose of the FMLA, which is to protect employees in a manner that accommodates "'the legitimate interests of employers.'" Satterfield, 135 F.3d at 981 (quoting 29 U.S.C. § 2601(b)(3)).

Goodman argues that, collectively, his mentioning of his high blood pressure during one-on-one meetings, his voice messages on February 18 and 19 stating that he was "sick" and the doctor's note that he gave Antonio reasonably suggested to Best Buy that he had a "serious health condition." Goodman further argues that he adequately notified Best Buy that he was in need of FMLA leave on the 18th and 19th. The court disagrees. Goodman's mentioning to his supervisors that he suffered high blood pressure during one-on-one meetings did not put Best Buy on notice that he suffered a "serious health condition," as that term is objectively defined by the FMLA. His documented absences were sporadic and he is unable to identify which of those absences, if any, were the result of high blood pressure. Goodman never requested FMLA leave as a result of his high blood pressure and testified that he never told his supervisor that he needed to be away from work because of his blood pressure condition. (Goodman Dep. at 108.)

As to the claimed notice Goodman gave on the 18th and 19th, by merely informing Best Buy that he was "sick" Goodman did not

adequately notify his employer that he was requesting or entitled to FMLA leave on the basis of a "serious health condition." See Collins, 272 F.3d at 1008. The doctor's note, which stated only "Off work until Mon. 2/21/05," also did not indicate the existence of a "serious health condition." Goodman did not inform Antonio that Dr. Hockett wrote the note on the basis of his high blood pressure or that his blood pressure condition was the reason he was absent. Further, he provided the note to Best Buy only after Antonio informed him that he was being terminated. Cf. Bailey v. Amsted Indus. Inc., 172 F.3d 1041, 1046 n.6 (8th Cir. 1999) (written excuses "given after the fact in response to disciplinary proceedings" were not given "as soon as practicable").

Goodman has not established that he adequately notified Best Buy that he was requesting or entitled to FMLA leave for his absences on February 18 and 19. Therefore, summary judgment is warranted on plaintiff's interference claim.

**B.   Retaliation Claim**

The FMLA prohibits an employer from retaliating against an employee who asserts their rights under the Act. Hite v. Vermeer Mfg. Co., 446 F.3d 858, 865 (8th Cir. 2006); Darby v. Bratch, 287 F.3d 673, 679 (8th Cir. 2002). To establish a prima facie showing of retaliatory discrimination, a plaintiff must establish (1) that he engaged in conduct protected under the FMLA, (2) that he suffered an adverse employment action and (3) a causal connection

between the two.  Hite, 446 F.3d at 865.  Goodman's retaliation claim fails because the court has determined that he was not entitled to FMLA leave for his unexcused absences on February 18 and 19.  Therefore, he is unable to establish that he engaged in conduct protected under the FMLA, and summary judgment is warranted on his retaliation claim.

**III.  Minnesota Human Rights Act Claim**

A district court has discretion whether to exercise supplemental jurisdiction over state law claims joined in a civil action after all claims over which it has original jurisdiction have been dismissed.  28 U.S.C. § 1367(c)(3); see also Franklin v. Zain, 152 F.3d 783, 786 (8th Cir. 1998); Townsend v. Am. Express Fin. Corp., 2004 WL 45501, at *7 (D. Minn. Jan. 5, 2004); Save Our Health Org. v. Recomp of Minn., Inc., 829 F. Supp. 288, 293 (D. Minn. 1993), aff'd, 37 F.3d 1334 (8th Cir. 1994).  The court has determined that Best Buy is entitled to summary judgment on all claims within its original jurisdiction.  The court declines to exercise supplemental jurisdiction over Goodman's MHRA claim and dismisses that claim without prejudice.

**CONCLUSION**

Therefore, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 19] is granted in part and plaintiff's MHRA claim is dismissed without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 4, 2006

                                    s/David S. Doty
                                    David S. Doty, Judge
                                    United States District Court